GsbeN, J.
delivered the' opinion of the court.
The complainant Martha A. R. Owen claims title to the slave, Tom, in controversy by virtue of’a deed for said negro, executed by Robert T. Cannon, to John McNairy Thompson, for her separate use, dated 26th February, 1835, and acknowledged and registered in Bedford county, the 16th of September, 1840.
The defendant, William Owen,' claims the negro by virtue of a deed from Herbert Owen, the husband of said Martha, the complainant, dated the 29th May, 1840.
The complainant alleges, that the negro was purchased with the proceeds of the sale of her land; but this is not satisfactorily proven. Her husband, Herbert Owen, probably paid for the negro with his own money, but he may have received moneys from the sale of a dower estate to which she was entitled.
It appears, however, that in 1835 Herbert Owen was unembarrassed in his circumstances; and a husband who is not indebted, may lawfully vest money in property for the separate use of his wife. Story’s Eq. sec. 355-7. It is insisted, however, that the copy of this deed, from the Register’s books of Bedford county, furnishes no evidence that it was executed earlier than the time it was acknowledged for registration; and that previously to that time the deed under which the defendant claimed was executed.
We think the copy of this deed, as registered, is prima facie evidence of the truth of its contents; that the date is a part of *355 the deed, and when Cannon acknowledged the execution of the deed, he acknowledged its execution on the day it bears date.
It would have been competent for the defendant to have proved, that it was antedated; and it would have been as easy for him to have, made proof as to the real fact, as it would have been for the complainant to have done,so.
As it regards the place of registration-, there is no objection to this deed. This is not a marriage contract, but is a deed for personal property, which, by the act of 1831, ch. 90, sec. 5, is required to be registered in the county, where vendor or person executing it lived at the time of its execution. This was done in the present case.
Nor can the ■ fact, that this deed was not registered for five years after its execution, make any difference, so far as the creditors of Herbert Owen are concerned. The non-registration would make it void as regards the creditors of Cannon, the bargainor, but it is valid as between the parties, and all other persons, .than such creditors. Baldwin vs. Baldwin, 2 Hump. Rep. 473.
2d. It appears from the record,'that pending the suit in the Chancery Court, an order was made by the consent of the parties, that the negro be -sold by the Clerk and Master, on a credit of six months.
A sale was made in pursuance of this order and Jabez Owen became the purchaser for one hundred dollars.
On the application of the complainant, the biddings were opened at fifty per cent, above the price for which the negro sold;"and before any further action was had in that matter, a final decree was pronounced in favor of the complainant in this cause.
Jabez Owen, the purchaser of the negro at the Clerk and Master’s sale, insists that he obtained a good title to the slave by the purchase aforesaid; and that the Chancellor had no power to set aside the sale, except upon grounds that would authorize a Court of Chancery to set aside a private sale.
This proposition, in its whole extent cannot be maintained. For although it is not a matter of course to open the biddings upon the application of a party, and the offer of a larg"’1’ sum, *356 still it is the duty of the Chancellor to see that sales under his order be conducted fairly, and under such circumstances as to insure the best price for the property to be sold. What precise circumstances, calculated to diminish the price of the property, would justify the Chancellor in setting aside the sale, or opening the biddings, must be left in a great degree to his discretion. This court should be slow to control that discretion, unless the case presented a very palpable error in the exercise of it. But this, we think, does not appear in this case. The affidavits show, that the negro is worth from two to four hundred dollars; that he was hired for one hundred dollars per year; and that when put up for sale by the. Clerk and Master, he looked badly, as if he was sick. He sold for only one hundred dollars, on six months credit. Here was such gross inadequacy of price, as that it would go far to shake the validity of a private sale. Besides, the negro looked badly, and doubtless bidders were deterred from a belief that he was an unhealthy slave and worth but little. It was indiscreet in the Clerk and Master to sell him under such unfavorable circumstances; and the defendant, who had possession of him, should have interposed to prevent a sale, until any temporary indisposition had passed away.
But, instead of that, they avail themselves of that indisposition to obtain him for a third of his value.
There is no error in this record, and we affirm the decree.